**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT DOUGLAS TUCKER,<br><br>Plaintiff,<br><br>v.<br><br>KIMBERLY DAWN SANSOM,<br><br>Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 5:25-CV-02341-CEH<br><br>JUDGE CARMEN E. HENDERSON<br>UNITED STATES MAGISTRATE JUDGE<br><br>**MEMORANDUM OPINION & ORDER** |

Before the Court is Defendant Kimberly D. Sansom's motion for summary judgment on all of Plaintiff Scott D. Tucker's claims against her. For the reasons explained below, Defendant's motion is GRANTED and summary judgment is entered in favor of Defendant.

## I. Relevant Procedural History

On October 23, 2024, Defendant filed a Chapter 13 bankruptcy case in Canton, Ohio. (ECF No. 1 at 1-2). Plaintiff filed an Adversary Complaint against Defendant on February 8, 2025, alleging claims of malicious prosecution, false imprisonment, and intentional infliction of emotional distress, and seeking a determination "that a debt is owed, the amount of the debt, and that the debt is not dischargeable in Debtor's bankruptcy under 11 U.S.C. Section 1328(a)(4), a non-dischargeability provision specific to Chapter 13 cases." (*Id.* at 2). While "the Northern District of Ohio has a 'General Order of Reference' automatically transferring all bankruptcy cases to the bankruptcy courts," the bankruptcy court concluded it was "statutorily prohibited from determining personal injury tort claims." (*Id.* at 10-11). Thus, on August 15, 2025, the bankruptcy judge recommended that the District Court withdraw the reference and transfer the case to the

District Court for trial. (*Id.* at 12). On October 30, 2025, United States District Judge John R. Adams adopted the recommendation, and the case was transferred to this Court. (ECF No. 2). The parties subsequently consented to magistrate judge jurisdiction, and the matter was transferred to the undersigned's docket for all proceedings. (ECF No. 16).

On August 11, 2026, the Court granted Plaintiff's motion for leave to file a second amended complaint. (ECF No. 34-1).[1] Plaintiff alleged that Defendant falsely claimed that "Plaintiff had broken into Defendant's home and assaulted her," resulting in felony criminal charges against Plaintiff and his temporary incarceration. (*Id.* at 2-4). Plaintiff also alleges Defendant made false statements to obtain a civil protection order against him and stalked him and members of his family despite the "no contact" order. (*Id.* at 4-5). Ultimately, on July 12, 2023, the felony charges against Plaintiff were dismissed with prejudice on the prosecution's motion. (*Id.* at 7-8). Plaintiff also alleges that Defendant falsely claimed Plaintiff violated the protection order, resulting in misdemeanor charges that were also ultimately dismissed. (*Id.* at 8-10). Based on these allegations, Plaintiff advances claims of (1) malicious prosecution under the Fourth and Fourteenth Amendments; (2) malicious prosecution under Ohio law; (3) abuse of process under Ohio law; and (4) intentional infliction of emotional distress. (*Id.* at 1, 11-13). Further, Plaintiff alleges that because Defendant "willfully and/or maliciously caused [him] personal injury," Defendant's liability is not dischargeable in her bankruptcy proceedings. (*Id.* at 13).

On August 20, 2026, Defendant moved for summary judgment on all claims against her. (ECF No. 38). Plaintiff filed a memorandum in opposition and Defendant filed a reply in support. (ECF Nos. 52, 56).

---

[1] Plaintiff filed the proposed second amended complaint as an exhibit to his motion to amend but did not separately file the second amended complaint on the docket after the Court granted his motion. (*See generally* docket). Thus, the Court considers the exhibit to be the controlling pleading and deems it filed as of the date of the order granting the motion to amend.

## II. Legal Standard

To be entitled to summary judgment, the moving party must demonstrate that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court "must view the evidence and draw all reasonable inferences in favor of the non-moving party." *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016). "The inquiry is whether a reasonable jury could return a verdict for the nonmoving party or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 624-25.

The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the non-movant to establish a "genuine issue" for trial via "specific facts." *Id.* at 324. The Court is required to enter summary judgment against a party that "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "As every law student learns in Civil Procedure, more evidence is required at summary judgment than at earlier stages of litigation." *DeVooght v. City of Warren*, 157 F.4th 893, 899 (6th Cir. 2025). "Conclusory statements unadorned with supporting facts will not do*." DeVore v. Univ. of Kentucky Bd. of Trs*., 118 F.4th 839, 844–45 (6th Cir. 2024).

## III. Established Facts for Summary Judgment

As Defendant correctly indicates, "Tucker attempts to survive summary judgment through an unsworn factual narrative completely unsupported by a single affidavit, deposition transcript, exhibit, or interrogatory response." (ECF No. 56 at 1). In fact, Plaintiff wholly fails to cite *any*

evidence—rather than his allegations—in support of his claims. As a result, there is little evidence in the record for the Court to consider. Defendant largely denies Plaintiff's allegations but "admits that she made application to the Court of Common Pleas for Richland County and moved the Court to grant to her, and against Scott Tucker, a Civil Stalking Protection Order pursuant to O.R.C. 2903.214." (ECF No. 37 at ¶ 11).

The evidence submitted by Defendant establishes that in November 2022, Plaintiff was charged with felonious assault, two counts of burglary, trespass in a habitation when a person is present, and assault. (ECF No. 38-1 at 1-2). The case proceeded to trial on July 6, 2023. (*Id.* at 8-9). On July 10, 2023, the prosecutor moved to dismiss the case with prejudice. (*Id.* at 9; ECF No. 38-2). The prosecutor indicated that "[o]ne of the State's witnesses, while under oath on the stand, gave false testimony" and "[d]ue to this false testimony, the State does not believe it is able to proceed with the charges in good faith." (ECF No. 38-2 at 1). The prosecution indicated that contrary to the victim's testimony that she told the prosecutor's office that she had sex with Tucker twice after the charges were indicted, the victim had not disclosed this contact. (*Id.* at 2-3). Nor did the victim tell the prosecution about a meeting on June 10 where she "not only spoke with [Tucker] on the phone but picked him up; drove him to McDonalds to buy him a meal; purchased two marijuana vapes for him; and 'drove around.'" (*Id.* at 3). The prosecution indicated that while the victim's false statements were "not directly related to the elements of the offenses," they "demonstrate[d] that the witness's complete testimony may not be truthful and may tend to negate the guilt of the Defendant." (*Id.* at 4). The court granted the motion and dismissed the criminal case with prejudice. (ECF No. 38-1 at 9).

## IV. Discussion

Plaintiff's theory of the case—although not supported by any evidence—appears to be that

Defendant falsely accused Plaintiff of entering her home and assaulting her and these false statements (1) resulted in the criminal charges against Plaintiff that were ultimately dismissed, and (2) allowed Defendant to obtain a protection order against Plaintiff, which she subsequently accused Plaintiff of violating, resulting in additional criminal charges. Defendant argues that because "Ohio has clearly held that absolute privilege protects individuals who report an actual or possible crime, even if those statements are false," any statements made by Defendant regarding Plaintiff's alleged criminal conduct were privileged such that Plaintiff's state law claims all fail. (ECF No. 38 at 3-4). Further, Defendant argues that Plaintiff is unable to demonstrate that she acted under color of law as required to support her federal malicious prosecution claim. (*Id.* at 4).

**A. Res Judicata**

As an initial matter, both parties dedicate significant portions of their briefs to discussing the application of Ohio's doctrine of *res judicata* based on Plaintiff's statement in the initial adversary complaint that "under Marsy's Law, Sansom had a right to file a direct appeal from the trial court's order dismissing all criminal charges with prejudice, and by failing to appeal it, that dismissal is now *res judicata*." (*See* ECF No. 38 at 4). Defendant argues *res judicata* does not apply such that she "is not barred from contesting Tucker's allegations or any determinations made within the criminal proceeding." (*Id.* at 8). Plaintiff responds that "[t]he Judgment of the Common Pleas Court in Dismissing the Felony Charges against Scott D. Tucker with Prejudice and the Dismissal of two, separate, subsequent Misdemeanor, Criminal Prosecutions of Scott D. Tucker for separate violations of a Civil Stalking Protection Order, obtained based on Sansom's false representations to the Court, prohibit Sansom from collaterally attacking those Judgment in this Proceeding." (ECF No. 52, PageID #: 342). Defendant replies that "[t]he Ohio Supreme Court has repeatedly held that criminal judgments cannot bind civil litigants due to differences in evidentiary

rules, standards of proof, and discovery" such that the "dismissal of Tucker's criminal case has zero preclusive effect against Sansom in this civil forum." (ECF No. 56 at 6).

> The doctrine of res judicata embraces two related concepts in Ohio—claim preclusion and issue preclusion. Claim preclusion bars claims that were or might have been litigated in an earlier lawsuit between the parties that resulted in a valid final judgment. For purposes of res judicata, a claim includes all theories of recovery or forms of relief flowing from those theories that arise from a particular transaction or occurrence. On the other hand, issue preclusion—sometimes called collateral estoppel—applies to a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction.

*Sheetz, Inc. v. Centerville*, 2026-Ohio-3531, ¶ 8 (citation modified).

While the Court ultimately agrees with Defendant that *res judicata* does not bar her from defending against Plaintiff's claims, it does so for simpler reasons than those outlined in the parties' arguments—which focus on whether the criminal proceedings were resolved in Plaintiff's favor and whether Defendant is in privity with the state. Looking first to claim preclusion, Plaintiff clearly would not have been able to raise the civil claims at issue here in his criminal proceedings such that the claims—and Defendant's defenses to those claims—are not ones that "were or might have been litigated in the first action." *Sheetz*, 2026-Ohio-3531, ¶ 22. Turning to issue preclusion, even if this Court were to assume that Defendant was in privity with the state and that dismissal of the criminal charges amounts to termination in Plaintiff's favor—issues the parties dispute—the dismissal only establishes that based on some false statements "not directly related to the elements of the offenses" by the victim, the state felt it could not proceed with the charges. (*See* ECF No. 38-2). At *best*, the dismissal establishes that Sansom committed perjury and in doing so created significant doubt in the prosecution that dismissal of the charges was warranted. However, accepting these facts as true does not impact the issues currently before this Court. Importantly, the dismissal did *not* establish that Plaintiff did not commit some or all of the actions he was

accused of; that Defendant's statements to officers regarding Plaintiff's alleged actions were false; or that Defendant acted maliciously in making any statements to officers and the prosecution.

Overall, in defending against Plaintiff's claims against her, Defendant is not challenging any aspect of the dismissal of the criminal proceedings such that *res judicata* has no application here.

**B. Litigation Privilege**

Defendant argues that under Ohio law, she is entitled to an absolute privilege, or litigation privilege, for any "informal statements which initiate criminal proceedings." (ECF No. 38 at 8). Defendant recognizes that "[c]ourts within the Northern District of Ohio have reached divergent conclusions regarding the application of absolute privilege to statements made to law enforcement," with some decisions suggesting "the Ohio Supreme Court has yet to provide a definitive ruling on the matter" and others maintaining "that the Ohio Supreme Court's guidance is clear, concluding that absolute privilege applies to statements made to the police." (*Id.* at 9-10). Defendant takes the position that she "is explicitly protected by the doctrine of absolute privilege for any alleged statements made to law enforcement officials or the prosecutor that resulted in eventual issuance of charges against Tucker" such that his state law claims "fail as a matter of law." (*Id.* at 12).

In response, Plaintiff argues that contrary to Defendant's assumption that his claims are "based solely upon her statements regarding the Prosecution of Tucker," his second amended complaint "is based not only on the failed Felony Prosecution, but also Sansom's continuing course of conduct" in seeking the civil protection order and related misdemeanor prosecutions. (ECF No. 52, PageID #: 346-47). Plaintiff argues Defendant is not entitled to immunity under the litigation privilege because such applies only to protect an individual from defamation lawsuits. (*Id.* at

PageID #: 350-52). Plaintiff relies primarily on *State v. Brown*, 2022-Ohio-4347, in making this argument. (*Id.*). Further, Plaintiff argues that various alleged statements by Defendant "bore no reasonable relationship to the subject matter of the Litigation, a Felonious Assault and Aggravated Burglary Prosecution." (*Id.* at PageID #: 353).

In *State v. Brown*, the Ohio Supreme Court held that "the litigation privilege, which protects a person from civil liability for defamatory statements that were made during judicial proceedings and that were reasonably related to the proceedings in which they were made, does not shield a person from criminal liability related to those statements." 2022-Ohio-4347, ¶ 2. While Plaintiff argues this holding limited the privilege's applicability to defamation claims, the Court does not read the *Brown* decision as limiting the privilege to defamation claims, especially since such a reading is inconsistent with prior statements by the Ohio Supreme Court. For instance, in *Reister v. Gardner*, the court explained that "[t]he litigation privilege provides absolute immunity *from civil suits* for defamatory statements made during and relevant to judicial proceedings." 2020-Ohio-5484, ¶ 10 (citation modified). This reference to "civil suits" implies that the privilege applies to all civil suits connected to an allegedly defamatory statement, not simply claims specifically for defamation. This conclusion is further supported by the *Reister* court's explanation that "[b]y removing the fear of future consequences, the litigation privilege facilitates the disclosure of 'pertinent information' and helps to 'ascertain the truth.'" *Id.* at ¶ 14. If the privilege applied only to defamation suits rather than all civil suits, it would not truly remove fear of future consequences as contemplated in *Reister*. In fact, "courts in Ohio have enforced the litigation privilege as an absolute defense to virtually every intentional tort when a statement is made in relation to a judicial proceeding." *Kettering Adventist Healthcare v. Collier*, No. 3:25-CV-273, 2026 WL 18777, at *7

(S.D. Ohio Jan. 2, 2026) (collecting cases). Thus, the Court concludes the litigation privilege is applicable to all Plaintiff's state law claims against Defendant.

The parties dispute whether the litigation privilege applies to bar Plaintiff's claims for Defendant's statements to both the prosecutor and to the law enforcement officers. "[T]here is some question as to whether statements made to law enforcement officers are entitled to an absolute privilege or a qualified privilege under Ohio law. The Supreme Court of Ohio has not addressed the issue, and there appears to be a split among the federal and state courts in Ohio." *Watts v. Bon Secours Mercy Health*, No. 4:25-CV-49, 2026 WL 607622, at *11 n.10 (N.D. Ohio Mar. 4, 2026) (collecting cases). However, this Court need not address the issue because Plaintiff has failed to provide any *evidence*—again, beyond his mere assertions—showing that Defendant made *any* statements other than those made in the course of the judicial proceedings. Because any statements Defendant made in the course of judicial proceedings are protected by the litigation privilege, Plaintiff's state law claims fail.

**C. Color of Law**

Turning to the federal malicious prosecution claim, Defendant argues Plaintiff cannot demonstrate that Defendant, as a private citizen, was acting under color of law as required to support such a claim. (ECF No. 38 at 14). Specifically, Defendant argues there is nothing more than a "barebones, conclusory assertion that there was some sort of conspiracy with John Does" to fabricate charges against Plaintiff. (*Id.* at 15).

Plaintiff responds that he "has established by sufficient evidence that Sansom's goal, acting in concert with a specific Deputy Sheriff acting under 'Color of Law,' was to have Tucker charged with a Felony Offense," and when that prosecution failed, she took steps to have Plaintiff charged with misdemeanor protection order violations. (ECF No. 52, PageID #: 340). Plaintiff argues "the

very same Deputy Sheriff was the responsible agent in the Felony and Misdemeanor Prosecutions" and "[t]he relationship between Sansom and the Deputy Sheriff is sufficiently close and cooperative to establish the element of 'Color of Law.'" (*Id.* at PageID #: 354).

Defendant replies that Plaintiff "has not produced an arrest report, a deposition transcript of the deputy, a single communication between Sansom and law enforcement, or an affidavit demonstrating an illicit agreement" and "[t]hat a deputy sheriff investigated Sansom's complaints, sought warrants, and made arrests reflects independent law enforcement action, not private-citizen conspiracy." (ECF No. 56 at 4).

The Court agrees with Defendant. A federal malicious prosecution claim alleges a violation of a plaintiff's Fourth Amendment rights and is thus brought under 42 U.S.C. § 1983. *Lester v. Roberts*, 986 F.3d 599, 606-07 (6th Cir. 2021). "Section 1983 makes liable every person who under color of law subjects, or causes to be subjected, another person to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1159 (6th Cir. 2021) (citation modified). Because a § 1983 claim requires the defendant to have been acting under color of law, "[a] plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).

> [The Sixth Circuit] recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (*i.e.* through state regulation or contract) between the state and the private actor so that the action may be attributed to the state.

*Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) (citation modified).

Here, while Plaintiff points to Defendant's alleged relationship with the unnamed deputy[2] as supporting a finding that she acted under color of law under both the nexus test and the state compulsion test, the problem is that Plaintiff again wholly fails to provide *any* evidence in support of his theories. As such, there is no evidence to support that Defendant, as a private citizen, acted under color of law and Plaintiff's malicious prosecution claim fails.

**D. Discharge**

In the second amended complaint, Plaintiff seeks a determination that because Defendant "willfully and/or maliciously caused [him] personal injury," Defendant's liability is not dischargeable in bankruptcy. (ECF No. 34-1 at 13). Defendant argues that because Plaintiff's claims all fail, Plaintiff's proof of claim is subject to discharge in the bankruptcy proceedings. (ECF No. 38 at 16).

Under 11 U.S.C. § 1328(a)(4), debts "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual" are not subject to discharge in Chapter 13 bankruptcy proceedings. Here, Plaintiff has failed to provide evidence to the Court to support any of his claims against Defendant. Because Plaintiff has not proved any claim against Defendant, he has also failed to establish that Defendant owes him any debt. Thus, the Court need not consider whether a debt is dischargeable because there is nothing establishing that a debt exists.

**E. Impact on Proceedings**

As discussed above, summary judgment in Defendant's favor is proper on all of Plaintiff's claims against her. However, this determination does not resolve all claims in this action as Defendant asserts counterclaims against Plaintiff for intentional interference with business

[2] To the extent Plaintiff asserts that this unidentified deputy was acting under of color of law, the deputy is not named in this lawsuit and thus, whether he was acting under color of law is immaterial in these proceedings.

relationship/contract, intentional infliction of emotional distress, and civil assault/negligence/battery. (*See* ECF No. 37 at 10-12). It is unclear how the dismissal of Plaintiff's claims—which were only before the Court because of the connection to Defendant's bankruptcy proceedings—impacts this Court's jurisdiction to consider Defendant's counterclaims. Accordingly, the parties will be required to submit briefs addressing this Court's ability to continue to preside over Defendant's counterclaims.

## V. Conclusion

For the reasons outlined above, Defendant's motion for summary judgment [38] is GRANTED and judgment is entered in Defendant's favor on all Plaintiff's claims against her. Within fourteen (14) days of this order, the parties shall submit briefs addressing the current status of Defendant's counterclaims and this Court's jurisdiction to consider such in the absence of Plaintiff's claims.

Dated: November 20, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE